2026 IL App (2d) 250225-U
No. 2-25-0225
Order filed July 8, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

JERROLD J. RAPCAN, Defendant-Appellant.

Appeal from the Circuit Court of Kendall County.
Honorable Jody Gleason, Judge, Presiding.
No. 23-CF-138

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: Evidence in prosecution for criminal sexual assault was insufficient to prove beyond a reasonable doubt that defendant used or threatened force; because those convictions are reversed, we enter sentences on the counts charging sexual relations within families, which had previously merged, and remand for consideration of discretionary consecutive sentencing.

¶ 2    Following a jury trial in the circuit court of Kendall County, defendant, Jerrold J. Rapcan, was found guilty of two counts (counts VI and VIII) of criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2020)). Count VI alleged contact between defendant's penis and E.R.'s mouth. Count VIII alleged contact between E.R.'s penis and defendant's anus. Both counts alleged that defendant made the contact by force or the threat of force. The jury also found defendant guilty of two counts (counts XXIV and XXVI) of sexual relations within families (*id.* § 11-11(a)), based on

the same acts alleged in counts VI and VIII. The trial court orally sentenced defendant to consecutive five-year prison terms on counts VI and VIII, to be served concurrent to three-year prison terms on counts XXIV and XXVI. (We note that the written sentencing orders mistakenly state that defendant was sentenced to four-year prison terms on counts XXIV and XXVI.) Defendant filed a motion to reconsider his sentences, and the trial court vacated the convictions on counts XXIV and XXVI, concluding that they merged into the convictions on counts VI and VIII. Defendant now appeals, arguing that the State failed to prove beyond a reasonable doubt that he committed criminal sexual assault. We reverse defendant's criminal sexual assault convictions, modify the judgment to enter sentences on counts XXIV and XXVI, and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4     E.R. testified that on March 26, 2023, he was 19 years old. Defendant was his stepfather. At that time, E.R. lived in Yorkville with his brothers, his mother, and defendant. E.R. was 5 feet, 11 inches tall and weighed 140 pounds. Defendant was tall, "large," "bulky," and "[f]airly built." Defendant "worked out" "[a]lmost every day." E.R. described his relationship with defendant as neither "good" nor "bad," but "[s]omewhere in between." "Sometimes [they would] get along," but other times they would "yell[ ] back and forth with each other." Asked if he had ever been "scared" of defendant, E.R. answered, "Yes." He explained that "[w]hen [defendant] was angry, he would break things and throw things around." However, defendant had never struck E.R. E.R. described himself as quiet and reserved. He avoided confrontation.

¶ 5     E.R. did not have an enclosed bedroom in the family home. Instead, he had a bed and some furniture in the unfinished basement. E.R. testified that he was gay. His family and close friends were aware of his sexual orientation. On the evening of March 25, 2023, E.R.'s mother and defendant went out. They arrived home in the early hours of the next morning. E.R., who was still

awake, spoke with his mother and then went to the basement. At some point, defendant came downstairs and asked E.R. if he had any cigarettes. They both went outside, and E.R. looked for cigarettes in his mother's car but found none. Defendant then went to the garage, and E.R. went back to the basement.

¶ 6    Once in the basement, E.R. lay on his bed and began masturbating while watching pornography on his phone. He was on his back, and his pants were down to his ankles. The basement lights were off. At some point, E.R. saw defendant near the bottom of the staircase. E.R.'s penis was erect, and his "first thought was to pull up [his] pants when [he] first saw [defendant]." Before E.R. could do so, defendant "reached out his hand and grabbed [E.R.'s] penis." This "surprised" E.R., but because he was "scared," he did not tell defendant to stop. E.R. explained that he "didn't want to get hit." Defendant masturbated E.R. and then placed his mouth on E.R.'s penis. Additionally, defendant unzipped his pants and "guide[d] [E.R.'s] hand to [defendant's] penis." When defendant's penis was erect, defendant "had [E.R.] give him oral." Defendant "put his penis in [E.R.'s] face," and E.R. placed his mouth on defendant's penis. Defendant's "hands were behind [E.R.'s] head, pushing [his] head forward." E.R. did not want to perform oral sex on defendant, but he was "scared" of defendant. E.R. acknowledged that defendant had no weapon and had said nothing threatening. Defendant subsequently lifted E.R.'s legs and touched his anus with his finger for three to five minutes. Defendant then penetrated E.R.'s anus with his penis. The experience was painful, and E.R. later noticed a tear to his anus. Defendant then bent over the bed and "ask[ed] [E.R.] to penetrate him." Later, E.R. clarified that defendant "told [him]" to penetrate him. E.R. was unable to get an erection. He continued: "I had to use my finger, and then I had grabbed my penis and kind of moved the blood to the head and tried to attempt to penetrate him." Defendant "attempt[ed] to assist [E.R.] in the penetration of

him" by "reach[ing] his hand back to grab [E.R.'s] penis and attempt[ing] to put it inside." E.R. touched defendant's anus with his penis but was unable to penetrate him. E.R. did not want to engage in these acts of penetration or attempted penetration. He did so "because of the same reasons [he had] already testified." Defendant then left.

¶ 7    E.R. called a friend, who took him to the police department. He reported what had happened. E.R. then went to the emergency room, where a nurse performed a sexual assault examination. The parties stipulated that if called to testify, Maria Sanchez, a forensic scientist with the Illinois State Police, would testify that she identified DNA profiles on (1) penile, oral, and anal swabs taken from E.R. and (2) a buccal swab taken from defendant. A DNA profile on the penile swab showed two contributors, one of whom Sanchez "assumed" to be E.R. As for the other contributor, "[defendant] [could not] be excluded ([was] included) with a statistical frequency of 1 in 44 [q]uadrillion at 15 STR loci." The oral and anal swabs excluded defendant as a contributor.

¶ 8    Defendant testified that on the evening of March 25, 2023, he and E.R.'s mother went out to dinner and then to a bar called the Roadhouse. Before leaving their home, defendant had two beers. He drank more beer during dinner and had three to six beers and two to four shots of Jack Daniel's at the Roadhouse. In addition, defendant took a pill that E.R.'s mother gave him. He did not know what the pill was.

¶ 9    When defendant arrived home, he went to the basement to put his gym clothes in the washing machine. After he started the washing machine, he noticed that E.R., who was in bed, appeared to be gesturing for defendant to approach. When defendant got closer, he noticed that E.R. was masturbating. E.R. reached out and grabbed defendant's genitals over his pants. E.R. then unzipped defendant's pants, grabbed defendant's penis, and started to suck on it. The next thing defendant remembered was waking up in bed with E.R.'s mother. She accused him of raping E.R.

However, defendant, who had felt anal pain upon waking, said that E.R. had raped him. Defendant testified that he had not been responsible for the corporal punishment of E.R. and had never kicked or punched him.

¶ 10    As noted, the jury found defendant guilty of two counts each of criminal sexual assault and sexual relations within families. The court initially imposed sentence on all four counts—resulting in an aggregate sentence of 10 years' imprisonment—but later vacated the convictions of sexual relations within families. This appeal followed.

¶ 11                                    II. ANALYSIS

¶ 12    Defendant argues that the evidence supporting his criminal sexual assault convictions is insufficient because the State failed to prove that he used force or the threat of force. In reviewing a challenge to the sufficiency of the evidence in a criminal proceeding, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 13    Section 11-1.20(a)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-1.20(a)(1) (West 2020)) provides:

"(a) A person commits criminal sexual assault if that person commits an act of sexual penetration and:

(1) uses force or threat of force[.]"

¶ 14    " 'Sexual penetration' " means

"any contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person, or any intrusion, however slight, of any

part of the body of one person or of any animal or object into the sex organ or anus of another person, including, but not limited to, cunnilingus, fellatio, or anal penetration. ***." *Id.* § 11-0.1.

¶ 15 There is no dispute that the evidence was sufficient to prove beyond a reasonable doubt that defendant committed the two acts of sexual penetration that were the basis of the jury's guilty verdicts: (1) placing his penis on E.R.'s mouth and (2) placing his anus on E.R.'s penis. Defendant argues, however, that the State did not prove beyond a reasonable doubt that he used force or the threat of force in committing these acts. For purposes of criminal sexual assault prosecutions, "force or threat of force" is defined as follows:

" 'Force or threat of force' means the use of force or violence or the threat of force or violence, including, but not limited to, the following situations:

(1) when the accused threatens to use force or violence on the victim or on any other person, and the victim under the circumstances reasonably believes that the accused has the ability to execute that threat; or

(2) when the accused overcomes the victim by use of superior strength or size, physical restraint, or physical confinement." *Id.*

¶ 16 As we have observed:

"There is no definite standard setting forth the amount of force necessary to establish criminal sexual assault by the 'use of force,' and each case must be considered on its own facts. [Citation.] The element of force refers to actions of the defendant that physically compel the victim to submit to the act of sexual penetration. 'Force' *** requires something more than the force inherent in the sexual penetration itself. [Citation.] A conviction of criminal sexual assault cannot be sustained by establishing merely that the victim did not

consent. [Citation.] *** Force can be established by evidence that the defendant used his bodily inertia to prevent the victim from disengaging. [Citation.] Physical resistance or demonstrative protestations are not necessary to demonstrate that a victim was forced to have sexual intercourse, and the absence thereof does not establish consent if the victim was threatened or in fear of being harmed." *People v. Mpulamasaka*, 2016 IL App (2d) 130703, ¶ 74.

At trial, defendant claimed consent, which is an affirmative defense to the charge of criminal sexual assault. See *People v. Kline*, 2024 IL App (1st) 221595, ¶ 61. "When a defendant raises consent as an affirmative defense, the State must prove lack of consent beyond a reasonable doubt." *Id.* "In sexual assault cases, force and consent are two sides of the same coin, and by proving the use of force, the State necessarily proves lack of consent." *Id.*

¶ 17    Defendant argues that there was no evidence that he used force beyond that inherent in the acts of penetration, and, thus, his guilt or innocence hinges on whether there was evidence that he threatened force. The State responds that "E.R.'s testimony was more than sufficient to demonstrate force or threat of force and disprove consent." We reiterate that the absence of consent is not a substitute for proof of the use or threat of force. *Mpulamasaka*, 2016 IL App (2d) 130703, ¶ 74. The State does not point to any purported evidence of force. Rather, the State notes that defendant was E.R.'s stepfather; that E.R. was 19 years old; and that, although defendant and E.R. were close in height, E.R. weighed 140 pounds while defendant was much larger and bulkier and worked out regularly. Those observations suggest that defendant was capable of using force, but not that he actually did so. Thus, the sufficiency of the evidence to sustain defendant's conviction of criminal sexual assault depends on whether there was proof beyond a reasonable doubt of a threat of force.

¶ 18    In this regard, the State argues that "[p]rior to the sexual assault, E.R. had seen defendant act violently and 'he would break things and throw things around' when angered. As a result of seeing defendant act violently when angered, E.R. was scared of defendant and would avoid confrontation with him." According to the State, "E.R. was too scared during the assault to do anything other than to just comply with defendant." However, the State does not identify any overt threat that defendant communicated to E.R. by words or specific conduct. Rather, the State appears to rely principally on E.R.'s general apprehensiveness of defendant based on defendant's physical condition and general temperament. In determining whether these factors are sufficient to establish a threat of force, *People v. Lamonica*, 2021 IL App (2d) 200136, which defendant cites, is instructive.

¶ 19    In *Lamonica*, we reversed the defendant's conviction of aggravated criminal sexual assault, which was prosecuted under the theory that, in committing criminal sexual assault, the defendant caused bodily harm to the victim (720 ILCS 5/11-1.30(a)(2) (West 2016)). The complaining witness, L.L., had invited the defendant to her home after dinner and a wine tasting at a restaurant. *Lamonica*, 2021 IL App (2d) 200136, ¶ 8. L.L., who was "very drunk" by the end of dinner, did not remember what occurred when they arrived at her home. *Id.* ¶¶ 8, 10. The next thing she recalled was finding herself naked in bed with the defendant on top of her. *Id.* ¶ 10. She did not remember how she became unclothed. *Id.* The defendant was trying to put his finger in her vagina. *Id.* He was "forceful and aggressive." *Id.* She told the defendant that it hurt, but he said she was fine. *Id.* The next thing she remembered was her being positioned " 'on all fours' " with the defendant having intercourse with her. *Id.* ¶ 11. The act "hurt 'really bad,' " and she started " 'bawling.' " *Id.* She admitted that she did not tell the defendant to stop or get off of her, but she did tell him that it hurt. *Id.* She crawled away, flipped over on her back, and "confronted" the

defendant. *Id.* She told him that she was willing to have sex with him but asked him why he was hurting her. *Id.* The defendant denied that he was hurting her, and he seemed to become " 'really upset.' " *Id.* ¶¶ 11-12. L.L. testified that she saw a vein " 'pop' " out on the defendant's neck, and she thought that if she did not " 'lay down and shut up,' " the defendant would start hitting her. *Id.* ¶ 12. L.L. laid down, and the defendant engaged in intercourse with her in the missionary position. *Id.* According to L.L., "[t]he penetration was forceful and violent[,]" and it hurt her. *Id.* L.L. told the defendant to stop, but he refused. *Id.* When the pain became too great, she pushed him off of her. *Id.* L.L. testified that the defendant "never threatened her, held her down, or grabbed her so hard that she could not release his grip." *Id.* ¶ 13.

¶ 20    We found the evidence insufficient to sustain the defendant's conviction. *Id.* ¶ 46. First, there was insufficient proof of force, as the State failed to establish that the defendant used force beyond what was inherent in the act of penetration. *Id.* ¶¶ 42-45. With respect to whether the evidence showed a threat of force, we observed:

> "The State notes that L.L. testified that she saw a vein in [the] defendant's neck 'pop,' leading her to believe that, if she 'did not lay [*sic*] down and shut up, [the] [defendant] was going to start hitting her.' However, [the] defendant did not threaten L.L., and her subjective interpretation of [the] defendant's neck vein as a threat was insufficient to qualify as an actual threat. Under the definition provided in section 11-0.1, an actual threat must be followed by a reasonable belief that the accused will act upon the threat. [Citation.] Here, there was no evidence that [the] defendant threatened L.L. or that any perceived threat was reasonable." *Id.* ¶ 44.

¶ 21    Likewise, here, defendant's physical characteristics—his size and level of fitness—do not themselves constitute an actual threat, even if E.R. perceived them that way. Although E.R.

testified that he was scared of defendant because of prior episodes of defendant throwing and breaking things when angry, defendant had never acted violently toward E.R. Nothing in the record suggests that it was reasonable for E.R. to believe that he was at risk of physical harm if he rebuffed defendant's advances.

¶ 22    The State argues that *Lamonica* is distinguishable because, in that case, the prosecutor improperly argued to the jury that the force inherent in the act of penetration established that the defendant used force within the meaning of section 11-1.20(a)(1) of the Code. See *Lamonica*, 2021 IL App (2d) 200136, ¶ 30. We disagree. Although we observed that the prosecutor's remark "exacerbated the problems with th[e] case" (*id.* ¶ 46), we do not read that observation to suggest that, but for the remark, we would have found sufficient evidence of either force or the threat of force.

¶ 23    The State alternatively argues that, if the evidence was insufficient to sustain defendant's criminal sexual assault convictions, his convictions and sentences on counts XXIV and XXVI (sexual relations within families) should be reinstated. As noted, the trial court imposed convictions and sentences on counts XXIV and XXVI but later vacated the convictions under the one-act, one-crime doctrine. See *People v. King*, 66 Ill. 2d 551, 566 (1977). The State asserts that, because the trial court "has already determined the appropriate sentences" for counts XXIV and XXVI, we should simply exercise our power under Illinois Supreme Court Rule 615(b)(1) (eff. Jan. 1, 1967) and reinstate the convictions and concurrent three-year terms of imprisonment on those counts. In response, defendant does not dispute that, with the vacatur of the criminal sexual assault convictions, the one-act, one-crime doctrine no longer applies and, thus, the convictions on counts XXIV and XXVI may be reinstated. However, defendant maintains that we should remand the case for the imposition of convictions and sentences on those counts. Defendant reasons that,

because a discrepancy existed between the oral and written sentences on those counts, a remand for resentencing would eliminate confusion about his sentences. Defendant further reasons that, because the trial court vacated the judgments on those counts, he could not raise any possible claims of error with respect to the verdicts on those counts. *Cf. People v. Caballero*, 102 Ill. 2d 23, 51 (1984) (court could not review claim of error with respect to conviction for which no sentence was entered).

¶ 24 Under the circumstances, we determine that the appropriate course is to enter the stated three-year sentences each for counts XXIV and XXVI, as defendant could not receive a greater sentence on either count than was originally imposed. See *People v. Smith*, 2022 IL App (2d) 200055, ¶¶ 19-22. Furthermore, we observe that because the criminal sexual assault counts triggered mandatory consecutive sentencing (730 ILCS 5/5-8-4(d)(2) (West 2024)), the trial court did not have occasion to consider whether consecutive sentences are necessary for the protection of the public (*id*. § 5-8-4(c)(1)). Accordingly, we remand for the trial court to make that determination in its discretion.

¶ 25                                    III. CONCLUSION

¶ 26 For the reasons stated, the judgment of the circuit court of Kendall County is reversed in part and modified in part. We reverse defendant's convictions and sentences for criminal sexual assault (counts VI and VIII) and enter three-year sentences for each of defendant's two convictions for sexual relations within families (counts XXIV and XXVI). Further, we remand with directions for the trial court to consider whether to enter discretionary consecutive sentences.

¶ 27 Reversed in part and modified in part; remanded with directions.